UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
at GREENVILLE


MICHAEL WAYNE BELCHER #314032   )
  )
v.   )      NO. 2:07-CV-178
  )
HOWARD CARLTON, Warden   )


## MEMORANDUM OPINION


Acting *pro se*, Michael Wayne Belcher, a prisoner in the Northeast Correctional Complex, has filed this application for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement under a state court judgment of conviction. [Doc. 2]. Respondent Warden has filed an answer to the petition, arguing that relief is not merited and that the application should be denied. Respondent has also submitted copies of the state court record. [Doc. 11 and Docket Entry of Dec. 12, 2007, Addenda 1-9]. Thus, the case is ready to be resolved.

But before the Court considers the sole issue raised in the § 2254 application, there are pending motions for a determination of status which have been filed by petitioner. Petitioner's motions will be is **GRANTED** [Docs. 12-14], and he is **ADVISED** that this opinion and a separate order of judgment have been entered this day.

## I.    PROCEDURAL HISTORY

In July of 2004, following a three-day trial, petitioner was convicted by a jury in the Criminal Court of Sullivan County, Tennessee of two counts of reckless aggravated assault. These charges arose from a March 27, 2000 vehicular accident, involving one fatality and severe bodily injuries to petitioner's passenger and the driver of the other vehicle.[1] For these offenses, petitioner received an effective 24- year prison sentence. Petitioner filed a direct appeal, but did not prevail, *State v. Belcher*, No. E2005-00532-CCA-R3-CD, 2006 WL 850887 (Tenn. Crim. App. Mar. 30, 2006), *perm. app. denied* (Tenn. 2006), and did not pursue post-conviction relief. Instead, he submitted this federal application for a writ of habeas corpus, asserting as his single ground for relief that the evidence was not sufficient to convict him.

After considering all habeas filings and submissions, the record of the state proceedings, and the applicable law, the Court concludes that petitioner is not entitled to habeas corpus relief and will **DISMISS** this § 2254 petition.

## II.    FACTUAL BACKGROUND

The following factual summary is taken from the state appellate court's opinion during petitioner's direct review:

> On March 27, 2000, the defendant was employed as a bellman
> at the Garden Plaza Hotel in Johnson City, Tennessee. One of

---

[1] A charge of vehicular homicide was tried jointly with the aggravated assault charges, but resulted in a mistrial. *State v. Belcher*, No. E2005-00532-CCA-R3-CD, 2006 WL 850887, at *1 n.1 (Tenn. Crim. App. Mar. 30, 2006), *perm. app. denied* (Tenn. 2006).

his duties as bellman was to transport guests of the hotel to and from the airport via the hotel's shuttle van. Doctor Mohammed Shouri, a guest of the hotel, had traveled to Johnson City to interview for a pathology residency position at East Tennessee State University. After completing his interview and returning to the hotel, Dr. Shouri requested transportation to the airport. The guest services manager of the hotel, Patti Copeland, instructed the defendant to drive Dr. Shouri to the airport. During their drive, Dr. Shouri asked the defendant several questions about Johnson City in an attempt to learn more about his potential new job site. Doctor Shouri characterized the defendant's responses to his questions as slow and sluggish.

While traveling toward the airport on Highway 75, Dr. Shouri noticed that the shuttle van had drifted into the lane of opposing traffic and that another vehicle was approaching the van. Doctor Shouri then said to the defendant, "Hey, hey, hey, hey, watch, watch, watch," which is the last thing he recalled prior to the ensuing crash with a Toyota Corolla driven by Ramona Gouge. Ms. Gouge testified that she saw the defendant's vehicle approaching in her lane of traffic and therefore decided to veer into the opposite lane of traffic, which was clear. When the defendant corrected his error and returned to his lane of traffic, the two vehicles collided.

After the accident, the occupants of both vehicles were transported to Johnson City Medical Center. Lieutenant Richard Hurley was the state trooper who initially responded to the accident. After he and other state troopers evaluated the crime scene, he drove to the hospital to interview the individuals involved in the crash. The defendant agreed to give Lieutenant Hurley a statement, which Lieutenant Hurley transcribed and the defendant reviewed. Ms. Copeland was also present during this exchange, and she agreed to sign the defendant's statement as a witness. In his statement, the defendant recounted that he was fatigued while driving and must have fallen asleep when he was awakened by Dr. Shouri's alert. He then realized he had crossed into the wrong lane of traffic and corrected his error but was unable to avoid Ms. Gouge's vehicle, which had crossed into his lane of traffic.

After giving this statement, the defendant agreed to provide a blood sample for forensic evaluation. Ms. Gretchen Kelsey, a hospital nurse, collected the blood sample pursuant to Lieutenant Hurley's request, and Lieutenant Hurley then mailed the sample to the Tennessee Bureau of Investigation (TBI) Knoxville Crime Lab for a toxicology analysis. Upon receipt, TBI Special Agent forensic scientist Stephanie Dotson performed an initial toxicology screen of the defendant's blood, and that test revealed the presence of cocaine and a cocaine metabolite, ecgonine methyl ester. Cocaine is the parent drug of the metabolite ecgonine methyl ester, meaning that when the human body ingests cocaine and attempts to break it down, the body transforms cocaine into ecgonine methyl ester. Further testing confirmed the presence of 0.07 micrograms per milliliter of cocaine and 0.05 micrograms per milliliter of ecgonine methyl ester.

Doctor Kenneth Ferslew, who is the Chief Toxicologist at the East Tennessee State University College of Medicine and who testified as the state's expert witness, opined that the defendant's fatigued state prior to the accident was caused by an acute stage of cocaine toxicity. Specifically, Dr. Ferslew explained that individuals who regularly ingest cocaine require larger and larger amounts of the drug to maintain their "high." After staying on this extended high for a period of time, their bodies "crash" when they come off the high, and they become very fatigued. Doctor Ferslew opined that the presence of cocaine and ecgonine methyl ester in the defendant's blood indicate that the defendant's fatigued state was caused by such a "crash."

Defense expert witness, Frederick Grim, a vehicular accident reconstructionist, opined that the physical evidence indicated that Ms. Gouge caused the accident by entering the defendant's lane of traffic and that the accident occurred in the defendant's lane of traffic, not Ms. Gouge's lane of traffic.

As a result of the accident, the occupants of both vehicles sustained injuries. The defendant broke his thumb and injured his leg; Dr. Shouri shattered his ankle, requiring several corrective surgeries; Ms. Gouge broke both ankles, several ribs, a wrist, a heel, and a hip, rendering her wheelchair-bound.

*State v. Belcher*, 2006 WL 22703233, at *1 -3 (all footnotes omitted). Upon these facts, petitioner was convicted.

**III.      STANDARDS OF REVIEW**

A state criminal defendant may obtain federal habeas relief if he can demonstrate that he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Proceedings in the United States District Courts, the Court is to determine, after a review of the entire record whether an evidentiary hearing is required. If a hearing is not required, the district judge may dispose of the case as justice dictates. After carefully reviewing the entire record, the Court finds it unnecessary to hold an evidentiary hearing.

Also, under the review standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA'"), a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies that principle to the particular facts of the case. *Id.* at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id.* at 411.

Findings of fact which are sustained by the record are entitled to a presumption of correctness, unless a petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The "highly deferential standard" dictated in § 2254(d) mandates that state courts' decisions "be given the benefit of the doubt." *Bell v. Cone,* 543 U.S. 447, 455 (2005) (citations omitted).

A habeas court must apply two levels of deference when insufficient evidence is claimed. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). Under *Jackson v. Virginia*, 443 U.S. 307 (1979), deference is owed to the factfinder's verdict, "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Jackson*, 443 U.S. at 324 n.16). Under AEDPA, deference is also owed to the state court's consideration of the trier-of-fact's verdict. *Id.*

The Court now examines the claim presented in the section 2254 petition under the above standards.

**IV.**     **DISCUSSION**

Count two of the presentment charges, in relevant part, that petitioner "did unlawfully, feloniously, recklessly and by use of a deadly weapon, to-wit: a motor vehicle, cause bodily injury to Mohammad Shouri, contrary to Tennessee Code Annotated, Section 39-13-102 . . . ." [Add. 1, vol. 1, at 1]. Count three reads exactly the same except the injured person is identified as Ramona Gouge. [*Id*. at 1].

In his challenge to the sufficiency of the convicting evidence, petitioner makes several arguments. In the first of these, he maintains that there is absolutely no evidence that he was intoxicated at the time of the accident. To support this initial argument, petitioner points out that four witnesses who observed him stated that he did not appear to be intoxicated at the time of the accident and that, moreover, the toxicologist, who was the prosecution's expert, testified that he could not state beyond a reasonable doubt that petitioner was "crashing" on cocaine when the accident occurred.[2] Petitioner suggests that this expert also established that petitioner was not intoxicated by testifying that the levels of cocaine and cocaine metabolite found in his blood analysis were within the "therapeutic range nonstimulant phase." Petitioner's second argument is that there is a lack of proof

---

[2]  As explained at the trial, when cocaine begins to decrease in a chronic or long-term cocaine user's blood system, the user "crashes" or comes off the high he has been experiencing and becomes exhausted, very fatigued, unable to concentrate, and very sedated and, sometimes, cannot even be awakened. [Add. 2, vol. 4, Test. of Dr. Kenneth Ferslew at 240].

showing that he intentionally or consciously fell asleep or strayed into the wrong lane of travel. Instead, he insists that the evidence shows that the collision occurred in his lane of travel, after he corrected his vehicle. Next, he argues that the state court misapplied state law in disposing of this issue. Finally, petitioner maintains that, under §§ 2254(d)(1) and (2), the state court's adjudication of his insufficient evidence claim is contrary to or an unreasonable application of Supreme Court precedent and also based on an unreasonable determination of the facts offered in the state court proceedings.

On appeal, petitioner offered the same arguments (with the exception of the last two). In addressing these issues, the Tennessee Court of Criminal Appeals first observed that its review would be governed, *inter alia*, by *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The state court then discussed the statutory definition of assault and of aggravated assault as provided respectively in Tenn.Code Ann. § 39-13-101(a)(1) and § 39-13-102(a)(2). *Belcher*, 2006 WL 850887, at *3. The state court noted that a person commits the former offense by "[i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another" and that a person commits the latter offense if he "recklessly causes an assault" *and* "causes serious bodily injury to another," *or* "uses or displays a deadly weapon." *Id*. The state court went on to explain that the word "reckless"

> refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all

8

the circumstances as viewed from the accused person's standpoint.

*Id.* (citing Tenn. Code Ann. § 39-11-302(c)). Serious bodily injury, recounted the state court, is defined as bodily injury involving extreme physical pain, protracted or obvious disfigurement, or protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty. *Id.* at *3 . (citing Tenn. Code Ann. § 39-11-106(a)).

Next, the state court delineated the proof adduced at trial to show reckless aggravated assault. The jury heard evidence that petitioner's blood sample contained 0.07 micrograms per milliliter of cocaine and 0.05 micrograms per milliliter of ecgonine methyl ester, which the toxicologist[3] stated was an indication that petitioner was "crashing" from his prolonged cocaine use, leading to his fatigued and inattentive state. The trier-of-fact likewise was presented with petitioner's statement to the investigating officer, admitting that the accident was a result of his drifting off to sleep and proof ascribing his drowsiness to his voluntary use of illegal narcotics.

The state court concluded that a rational jury, hearing all this evidence, could have found that, by ingesting cocaine and operating a motor vehicle, petitioner acted recklessly by being aware of, but consciously disregarding, a substantial or unjustifiable risk. It, therefore, ruled that the proof was sufficient to sustain petitioner's convictions for reckless aggravated assault.

---

[3] A toxicologist studies "the effects of toxic drugs and chemicals on humans, animals, the environment, and any living substance." [Add. 2, vol. 4, Test. of Dr. Kenneth Ferslew at 235-36].

As the state court correctly indicated, *Jackson* provides the controlling legal rule for this issue. *See Gall v. Parker*, 231 F.3rd 265, 287-88 (6th Cir. 2000). *Jackson* holds that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Thus, because the state court relied upon *Jackson*, the state court decision is not contrary to the relevant Supreme Court precedent. The question then becomes whether the state court's conclusion that the evidence was sufficient to support petitioner's convictions is an unreasonable application of *Jackson*. It was not. Here is why.

There was proof in the record showing that petitioner acknowledged that the accident occurred after he dozed off at the wheel. There was also testimony by the physician who was riding in the front passenger seat of the van petitioner was driving that petitioner was slow to respond to questions, that he was leaning, with his left shoulder, against the driver's side window, that he said that he was tired, that the van wandered into the left lane, into the path of an oncoming car, and that the last thing he remembered before the vehicles collided is yelling at petitioner, "Hey, hey, hey, hey, watch, watch, watch." [Add. 2, vol. 3, Test. of Dr. Mohammad Reza Shouri at 38-42].

True, witnesses testified that petitioner did not appear to be intoxicated at the relevant time; true also, an accident reconstructionist testified for the defense that the accident was caused by the other car veering into petitioner's lane of traffic. However, the TBI Forensic Scientist testified that her analysis of petitioner's blood sample showed small

10

amounts of cocaine and ecgonine methyl ester—a cocaine metabolite.[4] [*Id.*, vol. 4, Test. of Stephanie Dotson at 218-20, 223-25 ]. And, the toxicologist testified that he had reviewed the results of petitioner's blood tests, the witnesses' statements, and other documents, and that, in his professional opinion, petitioner was a chronic user of cocaine, who had become more tolerant of the drug and needed greater amounts of it to achieve the desired effect (stimulation), that he had used it shortly before the accident, that the concentration of cocaine in petitioner's blood indicated that he was under the influence of cocaine when the collision occurred, and that, at the time of the accident, he was "crashing" on cocaine." [*Id.*, vol. 4, Test. of Dr. Kenneth Ferslew at 235-70, 223-25]. Further, the other driver testified that she swerved into petitioner's lane of traffic in an effort to avoid colliding with the van which had drifted completely into her lane. [*Id.*, vol. 3, Test. of Ramona Gouge at 71, 75].

Insofar as the Court can discern, this issue primarily involves two competing versions of the accident (the State's version was that petitioner who was intoxicated or crashing from a cocaine high consciously disregarded a known, substantial risk by driving a guest in the hotel van to the airport; the defense's version was that the other vehicle caused the collision by swinging into petitioner's lane of traffic) and the jury's obvious acceptance of the version offered by the witnesses who supported the State's theory of the case. A jury is free to choose which version of a contested issue is true. *See Anderson v. City of Bessemer*

---

[4] The expert explained that cocaine is broken down into ecogonine methyl ester (a cocaine metabolite) as it is processed in the body.

*City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

Because this issue is one for the jury to decide and because "the evidence was [not] so overwhelmingly in favor of the petitioner that it compelled a verdict in his . . . favor," *Thompson v. Bock*, 215 Fed.Appx. 431, 436, 2007 WL 328688, *4 (6th Cir. Jan. 21, 2007), the state court's resolution of this claim was not an unreasonable application of the *Jackson* standard nor based on an unreasonable determination of the facts. Since petitioner's claim of insufficiency of the evidence does not pass either of § 2254(d)'s tests, the claim entitles him to no relief.

Lastly, petitioner's argument that the state court misapplied state law is not cognizable in this § 2254 proceeding because state courts are the final arbiters of state law. *See Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

## V.       CONCLUSION

For the above reasons, this petition will be **DENIED** and the case will be **DISMISSED**.

## VI.      CERTIFICATE OF APPEALABILITY

Finally, the Court must decide whether to issue a certificate of appealability (COA). Petitioner qualifies for issuance of a COA if he has made a substantial showing of

the denial of a constitutional right; he makes such a showing by demonstrating that reasonable jurists might question the Court's assessment of his constitutional claim. *See Slack v. McDaniel,* 529 U.S. 473 (2000). The Court has found that the single claim raised in the petition and adjudicated in state court would not support habeas corpus relief because, after an examination of the state court decision, the record, and the relevant governing law in a Supreme Court case, the decision did not run contrary to well established federal law, did not reflect that the state court had unreasonably applied that law, and did not demonstrate that the state court had disposed of the claim by unreasonably determining the facts offered to that court.

The Court now **FINDS** that reasonable jurists could not disagree with the resolution of this claim and could not conclude that it is "adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), and will **DENY** issuance of a COA. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

A separate order will enter.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
